**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JENNIFER CONLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SHERWIN-WILLIAMS MANUFACTURING COMPANY,<br><br>Defendant. | Civil Action No.: |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff Jennifer Conley ("Plaintiff"), by and through her undersigned attorneys, to obtain damages, both compensatory and punitive, injunctive relief and costs of suit from the named Defendant The Sherwin-Williams Manufacturing Company. The allegations are asserted on information and belief after due investigation, except as to those matters that relate to Plaintiff and her own acts, which are asserted on personal knowledge:

## I. INTRODUCTION

1. This is a Class Action to secure redress from the Defendant for damages suffered by members of the Putative Class defined below (the "Class Members") as a result of Defendant's wrongful emission, release, and discharge of noxious and odor-producing pollutants from its coatings manufacturing plant at 372 Cleveland Street, Rochester, PA 15074 (the "Facility").

2. Plaintiff, the Class Members, and/or their properties have been and continue to be exposed to substantial and unreasonable noxious odors as a result of Defendant's wrongful and tortious conduct in operating the Facility, causing injury and damages through private nuisance, public nuisance, and negligence.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28.U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is a diversity of citizenship between the parties.

4. This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(a), because there are 100 or more putative class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and one or more members of the putative class is a citizen of a state different from Defendant.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and because much, if not all, of the property that is the subject of this action is situated in this District.

## III. PARTIES

6. Plaintiff Jennifer Conley has lived in a residential property at 465 Mecklem Avenue, Rochester, PA 15074 since August 2021 and has owned the property since January 2025. Plaintiff is a citizen of the State of Pennsylvania.

7. Defendant is an Ohio corporation with an extensive business presence in Pennsylvania, and Beaver County more specifically, with several manufacturing and product finishing facilities in the Pittsburgh area, along with many retail paint stores. Defendant accepts service through its registered agent, Corporation Service Company, at 5235 North Front Street, Harrisburg, PA 17110.

## IV. BACKGROUND

8. Defendant owns and operates a coatings manufacturing facility located at 372 Cleveland Street, Rochester, PA 15074.

9. Defendant's Facility formulates coatings for packaging materials.[1] From its Facility, the coatings are delivered to customers, distributors, and blending facilities.

10. Coating formulation at plants like the Facility generally involves four major steps: preassembly and premix; pigment grinding/milling/dispersing; product finishing/blending; and product filling/packaging.[2] In the assembly and premix phase, liquid materials are assembled and mixed in containers to form a viscous material to which pigments are grinded or milled. The grinding process and equipment generally depend on the types of pigments being handled. After the pigments are sufficiently wetted and ground into isolated particles, they are dispersed in the liquid base through high-speed dispersion. Finishing products are added after this stage to achieve the desired characteristics of the coating, using organic solvents, pigments, and/or resins. At the final stage of product filling, the coating is filtered in a variety of ways depending on the end use of the product. After filtration, the coating is transferred into pails, drums, totes, tank wagons, or other containers for shipment.

11. It is well known that surface coating facilities like Defendant's may emit hazardous air pollutants from the solvents required in paint formulation mixing and in cleaning operations.[3,4]

12. Emissions from Defendant's Facility include, but are not limited to, volatile organic compounds (VOCs), a group of potentially odorous pollutants that the Facility emits directly into the ambient air.

13. VOCs emitted from Defendant's operations occur almost entirely from the solvents used in its paint formulations, paint thinning, and cleanup.

---

[1] https://industrial.sherwin-williams.com/na/us/en/industrial-wood/find-location/location-detail.undefined.en_US-10371510-PCG_Manufacturing_GPD.html
[2] https://www.epa.gov/sites/default/files/2015-08/documents/ii08_feb2005.pdf
[3] https://www.epa.gov/sites/default/files/2020-10/documents/c4s02_2a.pdf
[4] https://www.epa.gov/sites/default/files/2017-06/documents/paint_manufacturing_oo_sheet.pdf

14. Defendant's Facility operates pursuant to Plan Approval No. 04-00034 (the "Permit)", which sets a limit on the amount of VOCs it may emit.

15. Defendant "may not permit the emission into the outdoor atmosphere of any malodorous air contaminants from any source, in such a manner that the malodors are detectable outside the property of the person on whose land the source is being operated." 25 Pa. Code § 123.31.

16. A properly operated, maintained, and managed coatings manufacturing facility will contain, capture, or otherwise prevent the emission of VOCs and other odorous pollutants into the ambient air through the adequate operation of its formulation processes, including the proper care and management of its mixing, grinding, blending, and filling equipment.

17. A properly operated, maintained, and managed coatings manufacturing facility will contain, capture, or otherwise prevent the emission of VOCs and other odorous pollutants into the ambient air through the adequate installation and/or operation of air pollution capture and removal systems including but not limited to condensers, bag houses, adsorption devices, dust collectors, floating roofs, catalytic incinerators, thermal incinerators, scrubbers, and/or enclosed oxidizing flares.

18. A properly operated, maintained, and managed coatings manufacturing facility will contain, capture, or otherwise prevent the emission of VOCs and other odorous pollutants into the ambient air through the proper storage of materials, reclamation of solvents, cleaning, and treatment of its wastewater, and prevention of leaks and/or spills.

19. Defendant has failed to implement proper care and management of its mixing, grinding, blending, and filling equipment, thereby resulting in the offsite emission of noxious odors beyond its property.

20. Defendant has failed to install and/or operate adequate air pollution capture and removal systems at its Facility, thereby resulting in the offsite emission of noxious odors beyond its property.

21. Defendant has failed to properly store materials, reclaim solvents, clean, treat its wastewater, and/or prevent leaks or spills at its Facility, thereby resulting in the offsite emission of noxious odors beyond its property.

22. Defendant has failed to follow proper industrial practices to prevent the offsite emission of noxious odor, and has failed to capture, mitigate, and/or prevent noxious odors from escaping its Facility, thereby invading the homes and properties of Plaintiff and the Class.

23. As a result of numerous and continuing violations, the Pennsylvania Department of Environmental Quality (PADEP) has issued numerous Notices of Violation (NOVs) to Defendant.

24. On April 5, 2022, Defendant received an NOV from PADEP for four separate violations of its Clean Air Act permits, including for "failure to comply with the particulate matter emission limitations for combustion units" and for causing or permitting "the operation of an air contamination source subject to this chapter in a manner inconsistent with good operating practices."

25. On April 3, 2023, Defendant received an NOV from PADEP for "failure to submit a plan approval application in accordance with the application requirements."

26. On January 30, 2026, Defendant received an NOV from PADEP for failure to install a thermal oxidizer at its Facility and failure to perform required stack testing on its scrubbers in violation of its permit obligations.

27. Thermal oxidizers are industrial devices crucial to the mitigation of air pollution by destroying, among other things, VOCs that the Facility emits directly into the ambient air.

28. On March 24, 2026, Defendant received an NOV from PADEP for "failure to operate and maintain a source or control device in accordance with the specifications."

29. Numerous complaints of odor have been submitted to PADEP by neighboring residents regarding the noxious odor emissions from Defendant's Facility.

30. Numerous media reports have documented the horrible experiences of local residents due to Defendant's noxious odor emissions.[5,6,7]

## V. FACTUAL ALLEGATIONS

31. The invasion of Plaintiff's property by Defendant's noxious odors has interfered with Plaintiff's use and enjoyment of her property, resulting in substantial damages, including adverse effects on property value.

32. Defendant's noxious odors often enter indoor areas of Plaintiff's property, causing the entire house to smell like burnt chemicals and provoking allergy-like symptoms, such as congestion, dry eyes, and itchy skin, in Plaintiff and her family.

33. Plaintiff's property has been, and continues to be, physically invaded by Defendant's noxious odor emissions.

34. The noxious odors that entered Plaintiff's property originated from the Facility, where they are generated as a result of Defendant's coating formulation processes or waste products resulting therefrom.

35. A properly maintained, operated, and/or constructed coatings manufacturing plant will not release noxious odor emissions into the surrounding residential areas.

---

[5] https://www.wpxi.com/news/local/beaver-county-residents-concerned-by-smell-coming-nearby-paint-plant/R5METFE52NGNBBBRUXSVET44OM/

[6] https://www.cbsnews.com/pittsburgh/news/chemical-smell-rochester-county-sherwin-williams/

[7] https://www.cbsnews.com/pittsburgh/news/rochester-township-meeting-sherwin-williams-smell/

36. Defendant's operation, maintenance, engineering, control, and/or use of the Facility has caused noxious odors to invade the properties of Plaintiff and other similarly situated putative class members, causing property injuries and property damage.

37. Defendant intentionally, recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Facility, thereby causing the invasion of Plaintiff's property by noxious odors on intermittent and reoccurring dates too numerous to individually recount.

38. Defendant has failed to install and/or maintain adequate technology to control the release of noxious odors. Such failures include, but are not limited to, the following:

a. Failure to construct, operate, and/or maintain a thermal oxidizer that adequately mitigates and destroys VOCs from being released as fugitive emissions, resulting in the regular release of malodorous emissions into the atmosphere and surrounding residential areas;

b. Failure to operate the Facility in a manner that complies with VOC emissions requirements and regulations, resulting in the regular release of malodorous emissions into the atmosphere and surrounding residential areas;

c. Failure to install and/or operate adequate odor mitigation equipment to reduce odors from mixing, grinding, milling, dispersion, finishing, blending, and filling processes; and,

d. Failure to properly store and/or treat its various materials, including waste materials.

## VI. CLASS ACTION ALLEGATIONS

39. This Class Action is being filed by the Plaintiff, individually and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 23 (the "Class").

### A. Class Definition

40. Plaintiff seeks to certify the following class, defined as:

> All owner-occupants or renters of residential property who are located within a one (1.0) mile radius of the Facility at any time within the applicable statute of limitations.

41. To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definitions which are broader and/or narrower in time or scope of exposure.

42. Excluded from the class are Defendant's officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

43. Excluded from the class are any local, state, or federal government entities.

44. Members of the Class and/or their properties have been exposed to and continue to be exposed to noxious and odor-producing pollutants released by the Facility.

45. This Court may maintain these claims as a Class Action pursuant to Rule 23 *et seq*. of the Federal Rules of Civil Procedure.

**B. Numerosity**

46. Based on available census data, there are thousands of households within the Class Area, and therefore the members of the Class are so numerous that joinder of all parties is clearly impracticable.

**C. Commonality**

47. There are common questions of law and fact that affect the rights of every member of the Class, and the types of relief sought are common to every member of the Class. The same conduct by Defendant has injured or will injure every member of the Class. Common questions of law and/or fact common to the Class include, but are not limited to:

a. whether and how Defendant negligently, intentionally, recklessly, and/or willfully, failed to operate and maintain the Facility;

b. whether Defendant owed any duties to Plaintiff;

c. which duties Defendant owed to Plaintiff;

d. whether and to what extent Defendant failed to exercise reasonable care in operating and maintaining the Facility;

e. which steps Defendant have and have not taken in order to control the release of noxious odor emissions from the Facility;

f. whether and to what extent the Facility's noxious odor emissions were dispersed in and around the Class Area;

g. whether Defendant's Facility caused noxious odor emissions to be dispersed in and around the Class Area;

h. whether Defendant caused owner-occupants and renters of residential property of ordinary sensibilities to suffer harm;

i. whether it was reasonably foreseeable that Defendant's failure to properly operate and maintain the Facility would result in off-site odor emissions, including the invasion of private property interests in and around the Class Area;

j. whether Defendant's actions were unreasonable;

k. whether Defendant's noxious odor emissions have substantially interfered with the ability of residents of ordinary sensibilities within the Class Area to use and enjoy their private residences;

l. whether the degree of harm suffered by Plaintiff and the class constitutes a substantial interference with their private property rights;

m. whether private residential property values within the Class Area have been adversely impacted; and,

n. the proper measure of damages incurred by Plaintiff and the Class.

48. These questions of law and/or fact are common to the Class predominate over any questions affecting only individual Class Members.

**D. Typicality**

49. Plaintiff has the same interest in this matter as all the other members of the Class, and her claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories, and seek the same type of relief.

50. The claims of Plaintiff and the other Class members have a common cause, and their claims are of the same type. The claims originate from the same common source and the same failure(s) of Defendant to properly operate and maintain the Facility.

51. Class Members have suffered similar injuries and harm as a result of the invasion of their private residential properties by emissions released from Defendant's Facility.

**E. Adequacy of Representation**

52. Plaintiff's claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

53. Plaintiff has retained the services of counsel who are highly experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by noxious industrial emissions. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class members.

### F. Class Treatment Is the Superior Method of Adjudication

54. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law. The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

55. Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses.

56. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy It would be impracticable and undesirable for each Member of the Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Members of the Class.

57. No unusual difficulties are likely to be encountered in the management of this action as a class action.

58. Neither Plaintiff nor the Class Members were in any way responsible for the release, emission or discharge of noxious and odor-producing pollutants from the Facility.

## VII. COUNTS

### COUNT I
### Private Nuisance

59. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

60. Defendant owed, and continues to owe, a duty to Plaintiff and the Class to prevent and abate the unreasonable interference with, and invasion of, their private property interests.

61. The noxious odors that entered Plaintiff's and the Class's properties originated from the Facility, which was improperly and unreasonably maintained, engineered, designed, and/or operated by Defendant.

62. The noxious odors that invade Plaintiff's and the Class's properties are indecent and offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. Such obstruction includes, but is not limited to, the following:

a. Forcing Plaintiff and the Class to remain inside their homes and forgo the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b. Causing Plaintiff and the Class to keep their doors and windows closed when the weather would otherwise permit;

c. Depriving Plaintiff and the Class of the full value of their homes and properties;

d. Causing Plaintiff and the Class embarrassment, inconvenience, and annoyance including, but not limited to, creating a reluctance to invite guests to their homes and preventing Plaintiff and the Class from utilizing the outdoor areas of their respective properties.

63. Plaintiff's and the Class's properties are situated in such proximity to Defendant's Facility as to constitute neighboring properties, in that they are near enough to be impacted by the tangible effects of noxious odors released from the Facility.

64. By negligently constructing, maintaining, operating, engineering, and/or controlling the Facility, thereby causing noxious odors to physically invade Plaintiff's and the Class's properties, Defendant intentionally, knowingly, recklessly, and/or negligently created a

nuisance that substantially and unreasonably interfered with Plaintiff's and the Class's use and enjoyment of their properties.

65. As a foreseeable, direct, and proximate result of the foregoing misconduct by Defendant, Plaintiff and the Class have suffered damages to their properties as alleged herein, including, but not limited to, loss of full use and enjoyment of their properties and adverse impacts on property values.

66. Plaintiff and the Class did not consent to the invasion of their properties by noxious odors from Defendant's Facility, which is ongoing and constitutes a private nuisance.

67. Whatever social utility the Facility provides is clearly outweighed by the substantial harm suffered by Plaintiff and the Class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure significant loss in the use and value of their properties.

68. Defendant is liable for all damages arising from the creation and maintenance of such nuisance, including compensatory, injunctive, and/or exemplary relief.

## COUNT II
## Public Nuisance

69. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

70. Plaintiff and the Class utilize their properties as residences and reside within the Class Area.

71. The noxious odors that entered Plaintiff's and the Class's properties originated from Defendant's Facility, which is located within the proposed Class Area.

72. By failing to reasonably design, operate, repair, and/or maintain its Facility, Defendant has caused an invasion of Plaintiff's property by noxious odors on usually frequent occasions that are too numerous to individually list herein.

73. The noxious odors that invade Plaintiff's and the Class's properties are indecent and offensive to Plaintiff and the Class, and similarly indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiff's and Class Member's properties so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

74. Defendant knew that it was releasing, and continues to release, noxious odors onto neighboring properties yet failed to take reasonably adequate steps to abate the nuisance. Defendant owed, and continues to owe, a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

75. Defendant, by failing to reasonably repair, operate, and/or maintain its Facility to abate the nuisance, has acted, and continues to act, intentionally, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

76. As a foreseeable, direct, and proximate cause of Defendant's previously described conduct, Plaintiff and the Class have suffered damages to their properties as alleged herein.

77. By releasing noxious odors that physically invaded Plaintiff's and the Class's properties, Defendant created a nuisance that substantially and unreasonably impaired Plaintiff's and the Class's use and enjoyment of their properties on usually frequent occasions too numerous to list individually.

78. Such substantial and unreasonable interferences include, but are not limited to, inability to open windows when noxious odors are present, inability to utilize outdoor spaces, and

the inability for Plaintiff and the Class to invite guests to their homes due to the embarrassment and annoyance of emissions on Plaintiff's and the Class's respective properties.

79. The Class Area is home to a wide range of commercial and recreational activities, including, but not limited to, manufacturing, construction, health care, retail trade, ministry, education, dining, and lodging.

80. Plaintiff and the Class are a limited subset of individuals in Beaver County, and the Class Area, which includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

81. Members of the public, including, but not limited to, businesses, employees, commuters, tourists, visitors, minors, customers, clients, patients, and students, have experienced and have been harmed by the noxious odors emitted from the Facility onto public spaces. However, unlike Plaintiff and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind; in the form of lost property values and/or loss of use and enjoyment of their private property.

82. Apart from the private property damage incurred by Plaintiff and the Class, Defendant's noxious odors have substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

83. Plaintiff suffered, and continues to suffer, special harm to private property interests, including interference with the use and enjoyment of private land and property, deprivation of full value of private property, and diminished property values. These damages are different in kind from any damages suffered by the public at-large exercising the same common right to breathe uncontaminated and/or unpolluted air.

84. Plaintiff and the Class did not consent to the invasion of their properties by noxious odors from Defendant's Facility, which is ongoing and constitutes a private nuisance.

85. Whatever social utility the Facility provides is clearly outweighed by the substantial harm suffered by Plaintiff and the Class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure significant loss in the use and value of their properties.

86. Defendant's substantial and unreasonable interferences with Plaintiff's and the Class's property rights constitutes a nuisance for which Defendant is liable to Plaintiff and the Class for all damages arising therefrom, including compensatory, injunctive, and/or exemplary relief.

## JURY TRIAL DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Enter an Order permitting this action to be maintained as a class action, appointing Plaintiff as the representative of the Class and appointing Plaintiff's counsel as counsel for the Class;

B. Judgment in favor of Plaintiff and the Class as against the Defendant;

C. An award to Plaintiff and the Class of compensatory damages, including pre- and post-judgment interest;

D. An award of attorney's fees and costs, including pre-and post-judgment interest;

E. An Order holding that the entrance of the aforementioned noxious odors upon Plaintiff's and the Class's properties constituted a nuisance;

F. An Order holding that the Defendant was negligent in causing noxious odors to repeatedly invade and interfere with Plaintiff's and the Class's private residential properties;

G. An award to Plaintiff and the Class of injunctive relief not inconsistent with the Defendant's regulatory obligations; and,

H. Such further relief that this Honorable Court deems just and proper.

Plaintiff demands a trial by jury as to all claims so triable in this action.

Respectfully Submitted,

Dated: July 1, 2026

By: */s/ D. Aaron Rihn*

D. Aaron Rihn, Esquire
PA Bar ID No.: 85752
Sara J. Watkins, Esquire
PA Bar ID No.: 325770
Robert Peirce & Associates, P.C.
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel: (412) 281-7229
*arihn@peircelaw.com*
*swatkins@peircelaw.com*

Daniel C. Levin, Esquire
PA Bar ID No.: 80013
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dlevin@lfsblaw.com

Nicholas A. Migliaccio, Esquire*
Migliaccio & Rathod LLP
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
*nmigliaccio@classlawdc.com*

*Attorneys for Plaintiff and Class Members*

*To be admitted *Pro Hac Vice*